QUARTON v. BARTON.

1. WILLS—CONSTRUCTION—INTENT OF TESTATOR CONTROLLING.

In construing a will, the intention of the testator, as expressed in the instrument, taken as an entirety and giving to the words used the meaning the testator gave to them, must control.

2. SAME—WHEN RULES OF CONSTRUCTION APPLICABLE.

Rules of construction are adopted and applied in the interpretation of wills where the language used does not clearly and definitely express or convey the testator's intent, or where the intention is obscure because of the use of inconsistent words or clauses, but should not be applied in any case where the purpose and intention of the testator is positive and unmistakable, even though badly expressed and by words and phrases improperly used or arranged.

3. SAME—LIFE ESTATES.

Under a clause in a will giving to testator's wife all of his property, both real and personal, "for her lifetime, to do with as she sees fit," and at her death to go to certain persons, a life estate only passed to the widow, with remainder over to the persons named.

On the question as to whether power of disposition may be exercised by will in absence of express provision to that effect, see annotation in L. R. A. 1916C, 1046.

On law governing construction of wills, see annotation in 2 L. R. A. (N. S.) 443.

4. SAME—LIFE ESTATES—POWER OF DISPOSAL DOES NOT CREATE
ESTATE.

> Under said clause, absolute power is conferred upon testator's
> widow to sell and dispose of the property as she sees fit
> and use the proceeds for any purpose necessary for her
> support and comfort, but she may not give it away or dis-
> pose of it by will or by a deed operating as a testamentary
> disposition, since said power of disposal does not create an
> estate in her in the property, but confers an authority pre-
> sumably deemed necessary by testator for her enjoyment
> thereof during her lifetime.

Appeal from Oakland; Gillespie (Glenn C.), J.
Submitted October 28, 1929. (Docket No. 165, Cal-
endar No. 34,237.) Decided March 6, 1930.

Bill to construe a will by Fred V. Quarton, ex-
ecutor of the last will and testament of Louis H.
Rousseau, deceased, against Mrs. Robert Barton and
others. From a decree granting widow, Eudora H.
Rousseau, entire estate in fee simple, defendants
Bert Shundonny and others appeal. Reversed.

*Pelton & McGee,* for plaintiff.

*Howard I. Bond,* for defendant Eudora H. Rous-
seau.

*G. R. Empson,* for defendants Bert Shundonny
and others.

SHARPE, J. The bill of complaint herein was filed
to secure a judicial construction of the second para-
graph of the last will and testament of Louis H.
Rousseau. It reads as follows:

"Second I give, devise and bequeath all of my
property, either real estate or personal to my wife,
Eudora H. Rousseau, (for) her lifetime to do with

as she sees fit. At her death my estate is to be equally divided among the following:"

(The word "for" preceding "her lifetime" seems to have been omitted, but the intent to include it seems plain.)

A number of relatives were thereafter named. The first question presented is whether an estate in fee simple passed to the widow, or a life estate with remainder over to the persons named.

It may be stated at the outset that the decisions of this court relied upon by counsel on both sides go far to sustain the construction they claim should be given to this paragraph. But, as was said by Chief Justice Marshall in the early case of *Smith* v. *Bell*, 6 Pet. 68 (quoted with approval in *Jones* v. *Deming*, 91 Mich. 480, 482):

"It has been said truly 'that cases on wills may guide us to general rules of construction; but, unless a case cited be in every respect directly in point, and agree in every circumstance, it will have little or no weight with the court, who always look upon the intention of the testator as the polar star to direct them in the construction of wills.' "

Counsel are agreed that the intention of the testator, as expressed in the instrument, taken as an entirety and giving to the words used the meaning the testator gave to them, must control. This rule of construction seems to be universal. Rood on Wills, § 413; *Bateman* v. *Case*, 170 Mich. 617, 620; *In re Ives' Estate*, 182 Mich. 699, 704; *In re Manshaem's Estate*, 207 Mich. 1.

With the intent of the testator as a polar star to guide us, let us examine this paragraph. It clearly states that the testator gives all of his property to his wife for her lifetime. It just as clearly states that at her death it is to be equally divided among

certain persons, naming them. Were not the words "to do with as she sees fit" inserted, following the word "lifetime," it seems clear that but a life estate in the widow, with remainder over to the persons named, was created. Must we construe these words as granting such an absolute and unlimited power of disposal in the widow that she takes the fee notwithstanding the use of the words "for her lifetime" and the provision for remainder over at her death?

In giving effect to the intent of the testator, we must consider the clause as a whole. That part of it providing for a remainder over is superfluous and must be expunged if the fee passed under the language theretofore used. But we are no more at liberty to disregard this provision than the gift to the wife. Is not the intent of the testator easily understood? In making the gift to his wife, he, in effect, says to her, "You may do as you will with this property. Keep it as it is, or sell and dispose of it as you please. You may use any part or all of it, but, whatever you may do with it, that which you have left will belong to the persons I have named as remaindermen." The words "for her lifetime" clearly limit her estate to one for life. They are so simple, and of such familiar use, that the testator, when he read this will, or when it was read to him, must have clearly understood their meaning. He doubtless wanted his wife to have the use of his property so long as she lived. He fully appreciated the limitation of her ownership to her lifetime, and left it to the scrivener to express his further intent by appropriate language. Unfortunately, that used has created the uncertainty to which this litigation is due. But, if the intent is to be gathered from the four corners of the instrument, a life estate only passed to the widow, with remainder over to the persons named.

Rules of construction are adopted and applied in the interpretation of wills where the language used does not clearly and definitely express or convey the testator's intent, or where the intention is obscure because of the use of inconsistent words or clauses, but should not be applied in any case where the purpose and intention of the testator is positive and unmistakable, even though badly expressed and by words and phrases improperly used or arranged. *Hoffer* v. *Damskey*, 220 Mich. 97.

In the briefs of counsel, the decisions of this court, as well as those of other jurisdictions, are cited and commented on at length. Counsel for the widow relies, as did the trial court, on the rule announced in the early case of *Jones* v. *Jones*, 25 Mich. 400, and followed in the more recent case of *Gibson* v. *Gibson*, 213 Mich. 31. In this latter decision, the two classes of cases decided by this court are cited. The opinion in that case may well be said to hold that when the devisee, even if limited to a life estate, is given "full power of alienation and consumption" an estate in fee is created. The writer of this opinion did not concur in that of Mr. Justice Brooke, in which a majority of the court joined. I thought then, and I think now, that in so deciding this court lost sight of the cardinal rule which must be applied in the construction of wills "that the real intent and meaning of the testator, as expressed in the will, should be given effect, and that for this purpose all the clauses of the will are to be considered." *Gadd* v. *Stoner*, 113 Mich. 689, 691.

In *Cary* v. *Toles*, 210 Mich. 30, decided less than six months before the *Gibson Case* was submitted, and in which the same justices participated, there was unanimous concurrence in the opinion written by Mr. Justice Clark, in which it was held that,

where there was a gift without reservation to a granddaughter, "to have and to hold the same to her forever," followed by a proviso that, in case she should die without lawful issue, the unexpended part of the property so willed to her should go to others, the granddaughter took but a life estate. The authorities supporting this construction are reviewed and quoted from at length, and the conclusion reached that there should be gathered "from the four corners of this will a definite intention on the part of the testatrix to give a life estate in the property to her daughter." It may be noted that this case was not referred to in the opinion of Mr. Justice BROOKE in the *Gibson Case.* The case of *Law* v. *Douglass,* 107 Iowa, 606 (78 N. W. 212), was quoted from to sustain the holding in that case. The same quotation appears in *Killefer* v. *Bassett,* 146 Mich. 1. In the latter case, as well as in the Iowa case, the bequest was not limited to the lifetime of the taker. Neither of these decisions is applicable to a bequest limited to a lifetime, as was that in the *Gibson Case* or is that in the case before us. It is of interest to note that in a much later case in the Iowa court (*Olson* v. *Weber,* 194 Iowa, 512 [187 N. W. 465, 27 A. L. R. 1370]), in construing a bequest made to a wife "to have and to hold for and during her natural lifetime; with full power, however, to my said wife to sell and convey any or all of my said estate, real or personal, as she may see fit, and use the proceeds thereof as she may see fit," with remainder over of whatever part thereof that remains undisposed of by her at her death, it was held that but a life estate passed to the widow.

In 28 R. C. L. p. 238, it is said:

"The case of a devise of a life estate with an absolute power of disposition and a remainder over

has been passed upon by courts in many jurisdictions. The great weight of authority is to the effect that a life estate is not changed to a fee by the added power of disposal in the life tenant, but that the estate given the taker is a life estate with an added power of disposal. *  *  *''

The widow is still alive. The next question is, What she may do with the property during her lifetime? The absolute power of disposal is conferred upon her. She may sell and dispose of it if she sees fit to do so and use the proceeds for any purpose necessary for her support and comfort. But, in my opinion, she may not give it away or dispose of it by will or by a deed operating as a testamentary disposition. The power of disposal does not in itself create an estate in her in the property. It is but an authority derived from the will itself, and presumably deemed necessary by the testator for her enjoyment thereof during her lifetime. She has but an estate for life, and, as was said by Mr. Justice MONTGOMERY in *Gadd* v. *Stoner, supra* (693):

"But if the estate vested in her is less than a fee, certainly the limitation of good faith will be affixed by law."

In *Peer* v. *Jenkins* (N. J. Eq.), 140 Atl. 413, the testator by the last provision in his will gave to his wife and daughter "the privilege of selling my real estate, or any part of it at any time, and my wife to receive one-third of the profits and my daughter, Emily Jane Van Dine, two-thirds of the profits." In determining the legal effect of this provision, the court alluded to the fact that the will was drawn "by one unfamiliar with legal terms," and said that "In construing a will, the object to be attained is to determine the intent of the testator as gathered from

the whole document as applied to the testator's situation," and that "Courts, in construing a will, may depart from its strict words and read a word or phrase in a sense different from that which is ordinarily attributed to it, when such departure is necessary to give effect to what appears, on a full view of the whole will, to have been the intention of the testator," and held that the word "profits" in the paragraph above quoted should be held to mean "income."

In *Kratz* v. *Kratz,* 189 Ill. 276 (59 N. E. 519), the second paragraph of the will read:

"I give and devise to my wife, Caroline Kratz, during her widowhood, all my lands, tenements and hereditaments, of every nature and description, wherever situated; and all my interest in real estate, mortgages, notes, absolutely and unconditionally; also, all my money, accounts, bonds and evidences of indebtedness and personal property, and personal estate of every nature and description, absolutely and unconditionally,"

And the third paragraph read:

"I direct that after the decease of my wife, Caroline Kratz, all the property, real or personal, notes, mortgages, evidences of indebtedness, of whatever nature or description, which my said wife at the time of her death may possess, be given, devised and bequeathed to my only child, William Kratz, absolutely, and on condition that all my wife's just debts and funeral expenses be paid by him (William Kratz)."

The court held that the words "absolutely and unconditionally" should be understood to "mean no more than that the wife shall have the property without condition during the time in which she is to hold it."

In *Olson* v. *Weber, supra,* the provision of the will under consideration read:

"Second. I will, devise and bequeath unto my wife, Elizabeth Jones, all the property, real, personal and mixed, of which I may die seized or be entitled to at my death, to have and to hold for and during her natural lifetime; with full power, however, to my said wife to sell and convey any or all of my said estate, real or personal, as she may see fit, and use the proceeds thereof as she may see fit, but it is further my will that my said estate or whatever part thereof that remains undisposed of by my said wife at her death, shall go to and be held by Emma B. Taylor, wife of James A. Taylor, now residing at Averyville, in the said county of Peoria, for and during her natural lifetime, and at her death to be divided equally between the children of said Emma B. Taylor."

It will be noticed that the power conferred upon the widow to sell and convey "as she may see fit, and use the proceeds thereof as she may see fit" was quite similar to that in the case before us. After alluding to the familiar rule that "it is the intention of the testator which we seek to find and declare," and quoting many authorities, it was held that but a life estate passed to the widow, and that "A change in the form of the estate under the power expressly given in the will does not have the effect to enlarge or change the nature of the original title thereto;" that "the will of the testator could easily be defeated by the life tenant if by the mere fact of sale such tenant could enlarge a life estate into a fee."

In an annotation appearing in 2 A. L. R., wherein the estate of a life tenant, with power of disposal, was considered at length, under the heading "Gift," at page 1316, the annotator says:

"Where a will gives a life estate for the use and benefit of the life tenant, with a power of sale or disposition, and an express remainder over of 'what remains,' or some equivalent phrase, while the life tenant is entitled thereunder to the possession and control of the property during his life, with power to dispose of the whole or any part of the principal thereof as his necessities may require or his judgment dictate, he cannot dispose of it by gift *inter vivos.*"

Under the heading "Devise," which follows, it is said that under such a provision the life tenant "cannot dispose of the property by will or by a deed operating as a testamentary disposition."

The cases cited and discussed well support the text, and are so easily available for examination that we refrain from further reference to them.

In 17 R. C. L. p. 624, it is said:

"The great weight of authority, however, supports the rule that a life estate expressly created will not be converted into a fee, absolute or qualified, or into any other form of estate greater than a life estate, merely by reason of there being coupled with it a power of disposition, however general or extensive, for the reason that a power of disposal is but a bare authority derived from the will and is not in itself an estate."

I conclude the discussion of authorities by again referring to *Smith* v. *Bell, supra,* which has been so many times cited and quoted from by this and other courts. In that case a provision of the will under consideration read:

"I give to my wife, Elizabeth Goodwin, all my personal estate whatsoever, and wheresoever, and of what nature, kind, and quality soever, after payment of my debts, legacies, and funeral expenses; which

personal estate, I give and bequeath unto my said wife, Elizabeth Goodwin, to and for her own use and benefit and disposal absolutely: the remainder of said estate, after her decease, to be for the use of the said Jesse Goodwin.''

After a lengthy discussion of the legal effect of this provision and a review of the authorities, which we refrain from quoting, the chief justice announced the holding of the court to be that ''the limitation to the son on the death of the wife restrains and limits the preceding words so as to confine the power of absolute disposition, which they purport to confer of the slaves, to such a disposition of them as may be made by a person having only a life estate in them.''

The decree entered in the circuit court is reversed, and one will be entered here in conformity with this opinion. The taxable costs of the appeal will be payable out of the estate.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, POTTER, FEAD, and NORTH, JJ., concurred.